IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| KANSAS CITY CHIEFS FOOTBALL CLUB, INC., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 4:12-CV-00238-BCW ) |
| TAJE ALLEN, et al., | ) ) |
| Defendants. | ) ) |

## ORDER

Before the Court is Defendants' Motion to Vacate the Arbitration Award (Doc. #15, at p. 8) and Plaintiffs' Motion to Confirm Arbitration Award (Doc. #23). The Court being duly advised of the premises, for good cause shown, and for the following reasons, grants Plaintiffs' Motion (Doc. #23) and denies Defendants' Motion (Doc. #15).

## BACKGROUND

This matter stems from an arbitration provision that is standard language in the contract entered between National Football League ("NFL") players and the players' certain NFL Club.

NFL players are bound by a collective bargaining agreement ("CBA") negotiated between the National Football League Management Council ("NFLMC"), on behalf of all NFL teams including the Kansas City Chiefs ("Chiefs"), and the National Football League Players Association ("NFLPA"), on behalf of NFL players. The CBA includes a collectively-bargained standard NFL Player Contract that each player enters with an NFL Club.

The NFL Player Contract and Article IX of the now-expired CBA provide all disputes involving the interpretation or enforcement of the CBA or NFL Player Contract

1

must be submitted to final and binding arbitration before a mutually selected arbitrator. See Doc. # 1-1. Pursuant to the CBA, a "non-injury grievance" may be initiated by a player, a member team, the NFLMC or the NFLPA by filing a written notice to the opposing parties. Each NFL Player Contract at issue in this case stated it was made under and governed by Missouri law and contained a clause governing the resolution of disputes concerning workers' compensation claims, as follows:

> [J]urisdiction of all workers' compensation claims and all matters related to workers' compensation . . . shall be exclusively determined by and exclusively decided in accordance with the internal laws of the state of Missouri . . . without resort to choice of law rules. In addition, Player agrees that the Contract calls for performance in Jackson County, Missouri, and jurisdiction and venue for any and all workers' compensation disputes shall lie exclusively in the State Courts of Jackson County, Missouri.[1] See Doc. # 15-1, at 8.

At various times from 2009 through 2011, Scott Connot, Donald Edwards, Jr., Taje Allen, Rocky Boiman, J.R. Niklos, Eric Warfield, Greg Wesley, R-Kal Truluck, Morten Andersen, Shaunard Harts, Patrick Surtain, Gary Stills, Jerome Woods, Damion McIntosh, William Bartee, and Steve Williams ("Players") filed "cumulative injury" claims with the California Workers' Compensation Appeals Board ("WCAB"), each alleging injuries sustained in at least in part while playing NFL games in California.

In response, the NFLMC filed grievances against the Players, claiming each application for workers' compensation benefits in California violated the choice-of-law and/or choice-of-forum provisions of each player's NFL Player Contract with the Chiefs.

On September 22, 2011, the grievances against the Players were cumulatively submitted to Arbitrator Michael H. Beck. All parties were represented by counsel, presented argument, and entered exhibits into evidence. The parties stipulated each

---

[1] Some of the players signed a contract with slightly different, but materially the same, language. At arbitration, no party contended that the way this language appeared in each contract would impact the result.

"individual player[] named in the grievance [had] ongoing Workers' Compensation claims pending before the [WCAB] in California." See Doc. #15-1, at p. 9.

On February 23, 2012, the arbitrator issued an award sustaining the consolidated grievance in favor of the Chiefs and NFLMC. The arbitrator held he was bound by the CBA's terms and three earlier arbitration decisions rejecting nearly identical challenges to the choice-of-law and/or choice-of-forum provision. The arbitrator also held the Players were required to abide by their agreements and cease and desist from pursuing their California workers' compensation claims, "through the withdrawal of their claims before the applicable tribunal." See Doc. #15, at 15.

On February 24, 2012, Plaintiffs filed the Complaint in this matter to confirm and enforce the Arbitration Award pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C § 185, et seq. (Doc. #1). On April 10, 2012, Defendants filed an unopposed motion for an extension of time to answer or otherwise respond to the Complaint (Doc. #5). The Court granted the motion and ordered Defendants to answer or otherwise respond by June 7, 2012 (Doc. #6). Defendants filed their Answer, Motion, and Counterclaim (Doc. #15), which included Defendant's Motion to Vacate the Award, on June 7, 2012.

On June 25, 2012, the parties filed a Stipulation and [Proposed] Order Regarding Briefing Schedule (Doc #17), noting the parties' agreement "that this case presents purely legal issues to be decided solely on the briefs. . . ." The Court ordered opening briefs in support of each parties' respective positions be filed by July 26, 2012, opposition briefs be filed by August 16, 2012, and reply briefs be filed by September 6, 2012 (Doc. #18). Following full briefing, Plaintiffs filed three supplemental suggestions in support of their Motion to Confirm Arbitration Award (Docs. #42, #43, & #45). Because motions are

ruled "upon the written motion, supporting suggestions, opposing suggestions, and reply suggestions," the Court advised Plaintiffs they could file supplemental suggestions without first requesting leave. L.R. 7.0(b). However, the Court is not bound to consider any arguments set forth by Plaintiffs' supplemental suggestions.

Plaintiffs' Motion to Confirm the Arbitration Award (Doc. #23) argues the Court must confirm the arbitration award because the Court's limited review of the Award is based upon an underlying CBA that does not offend public policy. Defendants argue the Court should vacate the Award due to the the choice-of-law and/or choice-of-forum provision of the CBA. Defendants argue such provision renders the NFL Player Contracts against public policy because they operate as a waiver to the Players' rights to pursue workers' compensation in states other than Missouri.

**LEGAL STANDARD**

The CBA at issue falls under federal jurisdiction under § 301 of the LMRA. Textile Workers v. Lincoln Mills of Ala., 353 U.S. 448, 457-58 (1957). The Court may enforce CBAs and arbitration awards issued pursuant to a CBA. See Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Local 245 v. Kansas City Piggy Back, 88 F.3d 659, 660 (8th Cir. 1996).

When parties have agreed to use an arbitrator to interpret what their agreement means, the Court will set aside the arbitrator's award "only in rare circumstances." E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17, 531 U.S. 57, 62 (2000) (citation omitted). "Judicial review of a labor-arbitration award is narrow and deferential. An arbitrator's award must be upheld if it 'draws its essence from the collective bargaining agreement, and is not merely [the arbitrator's] own brand of industrial justice.'" Breckenridge O'Fallon, Inc. v. Teamsters Union Local No. 682, 664 F.3d 1230,

1233-34 (8th Cir. 2012). "If an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision. Id. (citing Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001).

"As with any contract, however, a court may not enforce a collective bargaining agreement that is contrary to public policy." W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am., 461 U.S. 757, 766 (1983). Such a public policy that would prevent a court from enforcing a CBA must be explicit, well-defined, and dominant, and must be "ascertained by reference to positive law and not from general considerations of supposed public interests[.]" E. Associated Coal Corp., 531 U.S. at 63.

## DISCUSSION

**1. DEFENDANTS' MOTION TO VACATE IS NOT PROCEDURALLY BARRED.**

As a preliminary matter, Plaintiffs argue the Court should deny Defendants' Motion to Vacate (Doc. #15, at p. 8) because it was filed out of time. "A party seeking to challenge the validity of an arbitration award generally must file a timely motion to vacate. Sheet Metal Workers Int'l Ass'n, Local Union No. 36 v. Systemaire, Inc., 241 F.3d 972, 975 (8th Cir. 2001). The statute of limitations for a motion to vacate under the LMRA is drawn from the most analogous forum state law. Id. In this case, the most analogous state law is the Missouri Uniform Arbitration Act which imposes a 90-day statute of limitations. Id. (citing MO. REV. STAT. § 435.405.2 (2012)). Typically, the failure to timely file a motion to vacate also "bars a party from later raising any defenses to the confirmation of the award that could have been raised in the vacation motion." Systemaire, Inc., 241 F.3d at 975.

In this matter, the arbitrator issued his decision on February 23, 2012. Within 90 days, Defendants filed an unopposed extension motion, requesting additional time to answer or otherwise respond to Plaintiffs' Complaint (Doc. #5). The Court issued an Order granting Defendants until June 7, 2012 to answer or otherwise respond (Doc. #6). Although the June 7, 2012 filing date of Defendants' Motion to Vacate is outside the 90-day limitations period to challenge the validity of an arbitration award, because Plaintiffs did not oppose Defendants' extension motion and the Court granted the Defendants' request for additional time, interests of justice and fairness require the Court consider the merits of Defendants' Motion.

## 2. THE COURT'S REVIEW OF THE ARBITRATOR'S AWARD IS LIMITED.

In his decision, the arbitrator noted his review was limited in scope to the merits of the consolidated grievance, while the question of public policy "'is wholly independent from the collective bargaining agreement and is ultimately one for the courts. . . .'" See Doc. #15-1, at 13 (quoting Chicago Bears Football Club, Inc. v. Haynes, 816 F. Supp. 2d 534, 537 (N.D. Ill. 2011)).

The Court agrees with Defendants' assertion the arbitrator's decision is not entitled to deference on whether the Award violates public policy. However, the Court finds the arbitrator's statement regarding his review's limitation to the CBA and the record indicates the arbitrator acted within the scope of his authority. As a result, the Court is bound to accept the arbitrator's interpretation of the CBA, as well as his legal and factual conclusions. See E. Associated Coal Corp. 531 U.S. at 62. Furthermore, "the standard for vacating an arbitration award on public policy grounds is high: defendants must demonstrate that the Award is contrary to 'well defined and dominant' public policy, which must be 'ascertained by reference to the laws and legal precedents and not

6

Case 4:12-cv-00238-BCW   Document 46   Filed 03/30/13   Page 6 of 11

from general considerations of supposed public interests.'" Haynes, 816 F. Supp. 2d at 537 (citing W.R. Grace & Co., 461 U.S. at 766).

### 3. THE ARBITRATOR'S AWARD DOES NOT VIOLATE ANY RELEVANT PUBLIC POLICY NOR CONTRAVENES THE FULL FAITH AND CREDIT CLAUSE.

Defendants' arguments to vacate the Award and opposing Plaintiffs' motion to confirm center on the principle that the NFL Player Contracts at issue are contrary to public policy because they contain provisions that interfere with California's sovereign right to determine what compensation to provide for workplace injuries that occur within its borders. Plaintiffs argue the limited nature of the Court's review requires confirmation of the arbitrator's award because Defendants cannot demonstrate the Award violates any explicit, well-defined and dominant public policy ascertained by reference to positive law.

Defendants do not contest the arbitrator's finding that the NFL Player Contracts at issue are made under and governed by Missouri law. However, Defendants suggest the Court should vacate the Award because the Missouri choice-of-law and/or choice-of-forum provision of the contracts is contrary to an explicit, well-defined, and dominant California public policy against employment agreements that operate to waive an employee's right to seek workers' compensation benefits before the WCAB. Specifically, Defendants rely on California labor law stating "[a]ny contract or agreement . . . made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee . . . of any right or remedy to which he is entitled . . . ." CAL. LAB. CODE § 2804 (West 2012). Defendants argue the choice-of-law and/or choice-of-forum provision requiring the Players pursue workers' compensation claims in Missouri effectively operates as a waiver of the right to pursue workers' compensation benefits in California for on-the-job injuries sustained in California, and

7

therefore impinges on California's interest in regulating workers' compensation within its borders.

"Under Missouri law, a choice-of-law clause in a contract generally is enforceable unless application of the agreed-to law is contrary to a fundamental policy of Missouri." Cicle v. Chase Bank USA, 583 F.3d 549, 553 (8th Cir. 2009) (internal quotation omitted). Missouri workers' compensation statutes provide for parties to contract for the application of another state's law, but Missouri law applies "unless the contract of employment in any case shall otherwise provide." MO. REV. STAT. § 287.110.2 (2012).

While the Eighth Circuit has not ruled on the issue, the general policy of the federal courts deciding federal question cases involving choice-of-law is to apply the approach outlined by the Restatement (Second) of Conflict of Laws. E.g., Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006); Daimler Chrysler Corp. Healthcare Benefits Plan v. Durden, 448 F.3d 918, 922 (6th Cir. 2006). Under this approach, a choice-of-law provision will be upheld, unless

> either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of a particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

Rest.2d Conflict of Laws § 187 (1971).

The parties do not contest Missouri law governs the CBA which includes the NFL Player Contracts. Further, parties do not contest the Chiefs are located in Missouri and that as a result, the Players performed the majority of their obligations under the CBA in Missouri. Finally, the parties do not dispute that the parties negotiated a choice-of-law and/or choice-of-forum provision requiring resolution of disputes in Missouri. The Court

8

therefore finds Missouri has a substantial relationship to the parties and to the contracts at issue and California does not have a materially greater interest than Missouri in this matter. As a result, the Court finds the public policy of California is not relevant to the Court's inquiry.

The Court finds the Award does not violate any explicit, well-defined, and dominant public policy in Missouri. Under these facts, the Players agreed to bring any workers' compensation disputes in a Missouri forum and pursuant to Missouri law. Missouri law permits parties to contract for the application of another state's laws to workers' compensation disputes. Therefore, a choice-of-law and/or choice-of-forum provision does not conflict with Missouri public policy. The choice-of-law and/or choice-of-forum provision at issue here does not prevent the Players from filing or pursuing workers' compensation claims; it only requires such claims be resolved in Missouri under Missouri law. To the extent an employee would prefer to file a workers' compensation claim in another state with sufficient connection to an on-the-job injury, the parties are free to agree to resolve workers' compensation disputes under the laws of another state. For the Court to find otherwise would vitiate the purpose of a choice-of-law provision in a contract.

Even if the Court found California public policy relevant in this case, Defendants have failed to show enforcement of the Award is contrary to California public policy. California has the power to apply its workers' compensation laws to employees with sufficient contacts with the state. Alaska Packers Ass'n v. Accident Comm'n of Cal., 294 U.S. 532, 523 (1935). Under California law, benefits are provided for industrial injuries sustained in California when the statutory conditions of compensation are met. CAL. LAB. CODE §§ 3600, et seq. (West 2012). The WCAB's jurisdiction covers "specific" injury,

9

occurring as the result of one incident which causes disability or need for medical treatment and/or "cumulative" injury, occurring as "repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment." CAL. LAB. CODE § 3208.1 (West 2012). To show the Award violates California policy, each player would have to "show his workers' compensation claim comes within the scope of California's workers' compensation regime." Matthews v. Nat'l Football League Mgmt. Council, 688 F.3d 1107, 1112 (9th Cir. 2012) (holding Matthews did not allege sufficient contacts with California to show his workers' compensation claim for cumulative injuries fell within the WCAB's jurisdiction because he did not allege injury causing disability or the need for medical treatment in California).

The Court finds none of the Players have met this burden. As in Matthews, none of the Players here have established enforcement of the Award violates an explicit, well-defined, and dominant California public policy by prohibiting them from pursuing workers' compensation benefits in California.

Furthermore, the Court finds the Award is not contrary to any explicit, well-defined, and dominant federal public policy, nor does it offend the Full Faith and Credit Clause. Defendants assert the Award violates federal labor policy, which provides an employee may not bargain away minimum labor standards. Metro. Life Ins. Co. v. Mass., 471 U.S. 724, 755-56 (1985). Further, Defendants argue the Award conflicts with explicit, well-defined, and dominant federal public policy because the Award upholds the choice-of-law and/or choice-of-forum provision which operates to effectively waive the Players' right to pursue workers' compensation benefits in California. As explained above, the Court finds Defendants have not met their burden to show their workers'

10

compensation claims fall within California's workers' compensation regime. See United Paperworkers Int'l Union, AFL-CIO v. Misco, 484, U.S. 29, 43 (1987) (stating "the violation of [an alleged public policy] must be clearly shown if an award is not to be enforced"). Therefore, Defendants have not shown the Award prevents the Players from pursuing something to which they would have otherwise been entitled under California state law.

Finally, the Court finds the Award does not contravene the Full Faith and Credit Clause. Choice-of-law questions relating to the Full Faith and Credit Clause include consideration of a state's contacts with the parties and transaction giving rise to the dispute. Allstate Ins. Co. v. Hague, 449 U.S. 302, 308 (1981). The selection of a state's substantive law is constitutionally permissible when the chosen state has a "significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." Hague, 449 U.S. at 312-13. Under these facts, Missouri's contacts are significant. The Players' contracts with the Chiefs were made under and are governed by Missouri law. The Players performed their contracts by practicing and playing games in Missouri a majority of the time. The Award's enforcement of the choice-of-law and/or choice-of-forum provision is therefore consistent with the Full Faith and Credit Clause. Accordingly, it is hereby

ORDERED Plaintiffs' Motion to Confirm Arbitration Award (Doc. #23) is GRANTED. It is further

ORDERED Defendant's Motion to Vacate the Award (Doc. #15) is DENIED.

IT IS SO ORDERED.

DATED: March 30, 2013

/s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT

11

Case 4:12-cv-00238-BCW   Document 46   Filed 03/30/13   Page 11 of 11